## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. **DEUNA R. SANDBURG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **CIV-17-1108-M** |
| | ) | |
| 1. **ISL EMPLOYEES, INC. d/b/a** | ) | |
| **RAMBLING OAKS ASSISTED** | ) | |
| **LIVING,** | ) | |
| 2. **INTEGRAL SENIOR LIVING, LLC** | ) | |
| **d/b/a RAMBLING OAKS ASSISTED** | ) | |
| **LIVING, and** | ) | |
| 3. **ADP TOTALSOURCE I, INC.,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) | **ATTORNEY LIEN CLAIMED** |

## COMPLAINT

**COMES NOW** the Plaintiff, Deuna R. Sandburg, and for her Complaint against the Defendants alleges and states as follows:

## PARTIES

1. Plaintiff, Deuna R. Sandburg, is an adult female who at all times relevant hereto was a resident of Cleveland County, Oklahoma.

2. The Defendants are:

a) ISL Employees, Inc. d/b/a Rambling Oaks Assisted Living, an entity doing business in Cleveland County, Oklahoma;

b) Integral Senior Living, LLC d/b/a Rambling Oaks Assisted Living, an entity doing business in Cleveland County, Oklahoma;

c) ADP Totalsource I, Inc, an entity doing business in Cleveland County, Oklahoma.

## JURISDICTION AND VENUE

3. This is a cause of action arising out of Plaintiff's former employment with

1

Defendants and is based on claims of: (a) sexual harassment, creation of a sexually hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); (b) disability discrimination, harassment and retaliation in violation of the Americans with Disabilities Act ("ADA") and ADA Amendments Act ("ADAAA"); (c) retaliation for opposing unlawful discrimination in the workplace in violation of Title VII and the ADA/ADAAA; (d) failure to pay wages in violation of the Fair Labor Standards Act; (e) wrongful discharge in violation of state law which prohibits terminating an employee for engaging in whistle-blowing activities; (f) violation of Oklahoma's Protective Services for Vulnerable Adults Act; and (g) blacklisting.

4.     Jurisdiction over Plaintiff's federal causes of action is vested in this Court under 28 U.S.C. § 1331.   This Court has supplemental jurisdiction over Plaintiff's corresponding state law claims as they arise out of the same core of operative facts as the federal claims, and jurisdiction over them is vested in this Court under 28 U.S.C. § 1367(a).

5.     The Defendants are located in Cleveland County and all acts complained of occurred in or around Cleveland County.  Cleveland County is located within the Western District of the United States District Court of Oklahoma.  Thus, venue is proper in this Court under 28 U.S.C. § 1391(b).

6.     Plaintiff has exhausted her administrative remedies as to the above-listed claims by timely filing an initial Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about March 29, 2017, and an Amended Charge of Discrimination with the EEOC on or about June 22, 2017.  Plaintiff received her Dismissal and Notice of Rights letter from the EEOC dated on or about July 22, 2017, which Plaintiff received by mail thereafter, and has timely filed this action within ninety (90) days of receipt of her notice of right to sue.

## STATEMENT OF FACTS

7.      Deuna Sandburg was hired with Defendants on or about June 6, 2016 as the Assisted Living Director/LPN at Rambling Oaks Assisted Living in Norman, OK ("Rambling Oaks").  Upon information and belief, Rambling Oaks is managed by Defendants Integral Senior Living, LLC and ISL Employees, Inc. (collectively "ISL"), which contracts with Defendant ADP Totalsource I, Inc. ("ADP") for payroll services.  ISL issued Sandburg's paychecks and ADP issued her W-2 during her employment.

8.      Sandburg suffers from PTSD, anxiety, high blood pressure, fibromyalgia, Attention Deficit Disorder ("ADD"), and lupus.  And, in or around 2013, she underwent a lumpectomy to remove breast cancer.  She has been in remission since late 2013.

9.      Due to her medical conditions, Sandburg is a qualified individual with a disability, in that, she is disabled, has a record of disability, and/or was perceived as disabled. Her impairments substantially limit her ability to perform one or more major life activities. Particularly, her PTSD, anxiety and ADD substantially limit her ability to *inter alia* think, sleep, concentrate and eat.  Her diagnosis with lupus substantially impacts her ability to *inter alia* concentrate, think, sleep and causes extreme fatigue.  Her fibromyalgia substantially impacts her ability to *inter alia* concentrate, think and sleep.  Moreover, her conditions impact one or more of her internally bodily processes.  Her PTSD, anxiety and ADD, impact *inter alia* her neurological system; her high blood pressure impacts *inter alia* her circulatory/cardiovascular system; her lupus impacts *inter alia* her immune, nervous and musculoskeletal systems; and her fibromyalgia impacts her excretory, nervous and musculoskeletal systems.  However, at all times relevant hereto, she was able to perform the essential functions of her job with or without reasonable accommodations.

10.      While employed with Defendants, Sandburg was subjected to a hostile work

environment, harassment and discrimination based on her gender and disability by Executive Director Grace Grajeda. Particularly, Grajeda repeatedly harassed Sandburg about the size of Sandburg's breasts in front of other employees, although she was aware that Sandburg wore a prosthetic following her lumpectomy.

11.     On one occasion, Grajeda stated in front of other employees that the reason male vendors came to visit the facility was because Sandburg's clothes were too tight. Grajeda further stated Plaintiff needed to wear bigger clothes or cover up and hide Sandburg's "boobs" so as not to draw attention and overwhelm staff, residents or outside vendors.

12.     During her employment, Grajeda also asked Sandburg to violate the ADA, which Sandburg refused to do. Particularly, in or around January 2017, Grajeda directed Sandburg to ask a certified nurse's aid ("CNA") whether the CNA was "mentally retarded." Sandburg told Grajeda she would not ask such a question, as Sandburg believed this would violate the ADA.

13.     On a prior occasion, in or around the Fall 2016, Sandburg and Grajeda were discussing an employee who was potentially suffering from a mental illness. Sandburg suggested that Defendants offer an employee assistance program to the individual. However, Grajeda responded, "no that costs too much money, firing her is easier."

14.     Sanburg also reported two instances of abuse and neglect of patients in or around January 2017. The first incident stemmed from a patient complaint that two CNAs left her in bed with feces. Sandburg reported the matter to Grajeda, who seemed undisturbed by the abusive and neglectful treatment. However, upon insisting that Grajeda take remedial measures, Grajeda did nothing more than writing the employees up.

15.     Shortly thereafter, Sandburg learned the same CNAs left another resident

sitting in a soiled chair for hours without checking on the resident.  Sandburg reported this incident too to Grajeda.  However, when Grajeda responded that she would simply talk with the CNAs again about their conduct, Sanburg escalated her complaint about the patient abuse and neglect to Regional Assisted Living Director ("ALD") Armida Wilson and Regional RN Supervisor Linda Mather.  And, Sandburg reported the abuse and neglect to the Department of Human Services.

16.     Thereafter, Sandburg was subjected to retaliation.  For instance, beginning in or around late January 2017, Sandburg was required to work eighty (80) to one hundred (100) hours per week, which exacerbated her disabilities and symptoms.

17.     Sandburg was required to spend the majority of her time performing manual/non-managerial duties, including, but not limited to, serving meals to residents, cleaning tables, feeding residents, bathing residents, performing maintenance tasks and passing medications.  Sandburg was required to perform such manual/non-managerial tasks during the majority of her employment, beginning in or around June 2016, but the total number of hours she was required to work spiked significantly in late-January 2017.

18.     Sandburg repeatedly requested several vacant job positions be filled.  However, Sandburg's requests were ignored.  Sandburg also requested to use PTO, beginning in or around June 2016 and continuing through January 2017, but was told by Grajeda she could not use PTO at the time due to short-staffing.

19.     On or about February 15, 2017, Grajeda issued a performance improvement plan ("PIP") to Sandburg.  Grajeda alleged that Sandburg was late completing paperwork, which was allegedly uncovered through an internal audit.

20.     Sandburg was initially informed of this issue by Wilson on or about January 4, 2017.  At that time, Wilson said this was Sandburg's first internal audit and that the

deficiencies related to paperwork were customary.

21.     As of February 15, 2017, Sandburg had caught up on the paperwork and formulated procedures to ensure the paperwork was completed in a timely fashion. Regardless, Grajeda disciplined Sandburg, issuing her the PIP, for alleged performance deficiencies (despite the fact that no deficiencies existed at that time).

22.     Due to the continued harassment, discrimination and retaliation, Sandburg lodged an internal complaint on or about February 16, 2017.  Sandburg emailed her complaint to Regional Operations John Gonzalez, Human Resources Representative Brian Nicholson, Mather and Wilson.

23.     Therein, Sandburg complained about several unlawful issues occurring at Rambling Oaks, including but not limited to Grajeda's derogatory comments about Sandburg's breasts despite knowing Sandburg is a breast cancer survivor.  Sandburg further complained about the unreasonable number of hours she was required to work and Grajeda's failure to adequately staff the facility in accordance with Oklahoma State minimum staffing requirements.   And, Sandburg had previously complained to Grajeda numerous times between in or around June 2016 through January 2017 that the Oklahoma State minimum staffing requirements were not being met.

24.     In response, Sandburg was told an investigation would be conducted into her concerns.  However, the harassment and increased work hours did not cease.

25.     Thereafter, Sandburg experienced increased scrutiny and retaliation from Grajeda and other employees.  For instance, Sandburg was notified of offensive social media comments Business Office Director Takeya Gilliam made referencing Sandburg as "Satan" and publicly asking for "prayers," stating that "Satan" was "trying to do a number" on the facility and some of its employees.  Due to the increased stress and anxiety of 100 hour work

weeks, the social media comments, and Defendants' failure to address her concerns, Sandburg was forced out of her employment and constructively discharged on or about February 27, 2017.

26.     Sandburg filed an initial Charge of Discrimination based on gender discrimination, disability discrimination, and retaliation on or about March 29, 2017. Thereafter, Sandburg suffered retaliation for filing such Charge in the form of bad job references from Defendants.

27.     For instance, Sandburg interviewed for a position with another employer in or around May 2017.  The interview went well, and the Executive Director indicated that Sandburg would be brought in to complete hiring paperwork after determining what salary the facility could offer. However, Sandburg did not hear back from the facility.  Rather, Sandburg was told by the recruiter who found the position that the potential employer opted not to hire Sandburg due to a bad job reference from Rambling Oaks.

28.     On another occasion, Sandburg was scheduled for a job interview that was cancelled the day before, citing a bad reference from Rambling Oaks.

29.     Throughout Sandburg's employment with Defendants, Sandburg was paid a specified salary which was intended to compensate Sandburg for forty (40) hours of work per week.  Sandburg was not paid any overtime compensation despite the fact that she was required to work more than forty (40) hours per week and the majority of her time was spent performing manual/non-managerial functions (set forth above).

30.     Although Sandburg was given the title of Assisted Living Director, she was not allowed to engage in managerial duties.  She was not permitted to exercise discretion in hiring, firing or budgetary decisions.

31.     Defendants were aware that Sandburg performed manual, non-exempt work.

In fact, Grajeda frequently told Sandburg that Sandburg was hired to perform such manual/non-managerial tasks.

32.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered the injuries described hereafter.

### COUNT I - ADA/ADAAA

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

33.     The matters alleged above constitute discrimination, harassment and retaliation based on a disability, a record of a disability and/or perceived disabilities in violation of the ADA and ADAAA.

34.     More specifically, Plaintiff is a qualified individual with a disability, in that, she suffers from physical and mental impairments (i.e., PTSD, anxiety, high blood pressure, fibromyalgia, ADD and lupus) which substantially limit her ability to perform one or more major life activities, as set forth above.  Plaintiff's disabilities also impact one or more of her internal bodily processes, as shown herein.

35.     Further, Plaintiff was regarded as disabled by Defendants because she had an actual or perceived impairment, that impairment was neither transitory nor minor, and Defendants were aware of and perceived the impairment as a disability at the time Plaintiff was employed with Defendants.

36.     Despite Plaintiff's physical and mental impairments, Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodations at all relevant times hereto.

37.     Plaintiff was constructively discharged under circumstances giving rise to an inference of discrimination.

38.     Plaintiff is also entitled to relief because she was subjected to unwelcome harassment, the harassment was based on her actual or perceived disabilities, and due to its pervasiveness or severity, a term, condition or privilege of her employment created an abusive working environment.

39.     Plaintiff is further entitled to relief because she engaged in a protected activity (including but not limited to her complaints about harassment due to her disability and opposing the questioning of an employee which would violate the ADA/ADAAA), suffered adverse actions, and a causal connection exists between her requests and the adverse action.

40.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

41.     Because the actions of Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT II -Title VII (Gender)

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

42.     The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964 in the nature of gender-based harassment, sexual harassment, creation of a sexually hostile work environment and retaliation.

43.     Plaintiff is entitled to relief under Title VII for gender-based harassment and sexual harassment, as looking at the totality of the circumstances, Plaintiff was subject to harassment which was pervasive or severe enough to alter the terms, conditions or privileges of her employment, and the harassment was gender-based or stemmed from gender-based animus.

44.     Plaintiff is further entitled to relief under Title VII for retaliation because she

9

engaged in protected activity, she suffered adverse actions subsequent to the protected activity; and a causal link exists between the protected activity and adverse actions.

45.      As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages.

46.      Because the actions of Defendants were willful, wanton or, at least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

### COUNT III - Title VII -Retaliation

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

47.      The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964 and the ADA/ADAAA in the nature of retaliation for her opposition to unlawful discrimination and retaliation in the workplace and for filing a Charge of Discrimination with the EEOC.

48.      Plaintiff is entitled to relief under Title VII and the ADA/ADAAA for retaliation because she engaged in protected activity (including but not limited to opposing unlawful discrimination and retaliation in the workplace), she suffered adverse actions subsequent to the protected activity, including but not limited to bad job references, and a causal link exists between the protected activity and adverse actions.

49.      As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages.

50.      Because the actions of Defendants were willful, wanton or, at least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

### COUNT IV - *BURK* TORT

For her fourth cause of action, Plaintiff incorporates all prior allegations and further

alleges and  states as follows:

51.    The acts above-described constitute a violation of Oklahoma's public policy which prohibits wrongful termination and retaliation against a whistle-blower for performing an act consistent with a clear and compelling public policy, i.e., refusing to participate in an illegal activity; performing an important public obligation; exercising a legal right or interest; exposing some wrongdoing by the employer; and performing an act that public policy would encourage or, for refusing to do something that public policy would condemn.

52.    More particularly, Plaintiff was wrongfully discharged from her employment in retaliation for having reported patient care concerns internally and to the State in violation of Oklahoma law, including but not limited to the Oklahoma Nursing Home Care Act (prohibiting retaliation against an employee for providing information to state officials, i.e. the Oklahoma State Department of Health).

53.    As damages, Plaintiff has suffered lost earnings, past and future, and other compensatory damages.

54.    Because the actions of the Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

### COUNT V - Violation of Oklahoma's Protective Services for Vulnerable Adults Act

For her fifth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

55.    The acts above-described constitute a violation of Oklahoma Protective Services for Vulnerable Adults Act (43 O.S. §10-104) which prohibits employers from terminating employment "for the reason that the employee made or caused to be made a report … pursuant to the Protective Services for Vulnerable Adults Act" (i.e., reporting that a vulnerable adult is suffering from abuse, neglect or exploitation).

56.    As damages, Plaintiff has suffered lost earnings, past and future, and other compensatory damages.

57.    Because the actions of the Defendants were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT VI - FLSA Violations

Plaintiff hereby incorporates by reference all preceding paragraphs as if fully set forth herein.

58.    At all relevant times, Defendants have been and continue to be an "employer" engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §203.  Plaintiff was an "employee" within the meaning of the FLSA.  And, at all relevant times, Defendants has had gross operating revenue in excess of $500,000.

59.    Plaintiff was not employed in a bona fide executive, professional, administrative, outside sales or other capacity exempting her from the overtime provisions of the FLSA. Defendants improperly treated and classified Plaintiff as an exempt employee.

60.    Defendants' failure to provide Plaintiff overtime compensation at a rate not less than one and one-half times her regular rate for hours worked over forty (40) hours in a workweek constitutes a violation of the FLSA, 29 U.S.C. § 207.

61.    Defendants also refused to allow Plaintiff to clock-in and out.  And, by failing to accurately record, report and/or preserve records of all hours worked by Plaintiff, Defendants have failed to make, keep and preserve records with respect to their employees sufficient to determine their wages, hours and other conditions and practices of employment in violation of the FLSA.

62.    Defendants' violations of the FLSA were knowing and willful.

63.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has

12

suffered a loss of income and other damages.  As such, Plaintiff is entitled to recover unpaid

wages, liquidated damages, attorneys' fees and costs incurred in connection with this claim.

## COUNT VII - Blacklisting

For her seventh cause of action Plaintiff incorporates all prior allegations and further

alleges and states as follows:

64.     The acts of Defendants described above constitute blacklisting in violation of

Okla. Stat. tit. 40 § 172.

65.     Defendants intended to injury Plaintiff by preventing future employment of

Plaintiff.

66.     As damages, Plaintiff is entitled to all damages allowed by state law.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in favor of

the Plaintiff and against Defendants and award back pay, front pay, compensatory damages,

punitive damages, liquidated damages, together with any appropriate equitable relief, pre-

and post-judgment interest, costs and attorney's fees.

Respectfully submitted this 12th day of October, 2017.

s/ Jana B. Leonard
**JANA B. LEONARD, OBA # 17844**
**LAUREN W. JOHNSTON, OBA # 22341**
**SHANNON C. HAUPT, OBA # 18922**
**LEONARD & ASSOCIATES, P.L.L.C.**
**8265 S. Walker**
**Oklahoma City, Oklahoma 73139**
**(405) 239-3800 (telephone)**
**(405) 239-3801 (facsimile)**
**leonardjb@leonardlaw.net**
**johnston@leonardlaw.net**
**haupts@leonardlaw.net**

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**